RAMCO SPECIALTIES, INC., Appellant,

v.

Eric PANSEGRAU, d.b.a. Tristate Tool & Die, Inc. et al., Appellees.

[Cite as *Ramco Specialties, Inc. v. Pansegrau* (1998), 134 Ohio App.3d 513.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18697.

Decided June 30, 1998.

514

*Ray L. Weber, Phillip L. Kenner* and *Arthur M. Reginelli,* for appellant.

*Kenneth A. Godlewski* and *Bruce H. Wilson,* for appellee Erich Pansegrau.

*Edmund M. Sawan,* for appellee Jack Barney.

BAIRD, Presiding Judge.

Plaintiff-appellant Ramco Specialties, Inc. appeals the decision of the Summit County Court of Common Pleas granting judgment in favor of defendant-appellee Erich Pansegrau and granting a directed verdict in favor of defendant-appellee Jack Barney. We affirm.

On December 22, 1995, Ramco filed its first amended complaint against Pansegrau and Barney in the Summit County Court of Common Pleas, alleging misappropriation of trade secrets and conversion, and praying for injunctive relief, damages, and punitive damages.

After mediation and settlement attempts failed, the case proceeded to a trial before the court. After Ramco presented its case, Barney moved for a directed verdict pursuant to Civ.R. 50. The trial court granted Barney's motion for a directed verdict, and Pansegrau proceeded to present his defense. On August 4, 1997, the trial court entered judgment in favor of Pansegrau on the basis that Ramco failed to establish by a preponderance of the evidence that Pansegrau misappropriated trade secrets from Ramco. Ramco appeals, assigning four errors.

## I.  Facts

In 1977, Richard Malson formed a company called Ramco Specialties, Inc. Ramco is a corporation engaged in the manufacture and distribution of "prevailing torque locknuts." The trial court, in its order, described "prevailing torque locknuts" as:

"[O]rdinary nuts which have been threaded and then distorted by a prevailing torque locknut machine whereby the top of the opening in the nut becomes slightly oval in shape, rather than round, and some of the threads at the top of the nut have also been distorted. When this type of fastener is used, the nut locks into place on a bolt and will not ordinarily loosen. This eliminates the need for lock washers or similar devices sometimes used to keep the nut from coming loose from the bolt. It takes considerable force to detach this type of locknut from a bolt."

A preincorpororation agreement provided that John Kolt was to receive twenty-one shares of Ramco, which represented twenty-one percent of the corporation. Kolt and Pansegrau were partners in a partnership known as Tri-State Tool and Die Company. In return for the twenty-one shares in Ramco, Kolt and Pansegrau were to design and build a locknut forming machine for Ramco. At least six of these machines were produced by Pansegrau and Kolt for Ramco. Kolt and Pansegrau received an additional ten shares of Ramco at a later time, for a total of thirty-one shares. Although the shares and dividends were to be divided equally between Kolt and Pansegrau, the shares remained solely in Kolt's name until 1992. In 1992, Ramco purchased Pansegrau's interest in Ramco for $771,000.

Tri-State Tool and Die Co. incorporated, becoming Tristate Tool and Die, Inc. ("Tristate") In 1994, Pansegrau, while operating Tristate, built a prevailing torque locknut machine identical to those he and Kolt had designed and built for Ramco, and he began manufacturing and selling prevailing torque locknuts through J. Barney and Associates, Inc.

## II.  Trade Secret

Ramco's first, second, and third assignments of error are:

"The court below erred in finding shareholders of a closely held corporation have no duty to the corporation to refrain from misappropriating trade secrets which they developed as their capital contribution to the corporation.

"The court below erred in failing to find the existence of trade secrets in the design of the Ramco locknut machine by failing to consider relevant legally determinative factors and misconstruing evidence relating thereto.

"The court below erred in failing to find that the trade secrets in the Ramco locknut machine were owned by Ramco."

All of these assignments of error, as well as Ramco's assignment of error regarding the directed verdict in favor of Barney, discussed *infra,* hinge on the existence of a "trade secret" or "trade secrets." A trial court's determination that certain information constitutes a "trade secret" will be upheld if supported

by some competent, credible evidence. *State ex rel. Fisher v. PRC Pub. Sector, Inc.* (1994), 99 Ohio App.3d 387, 393, 650 N.E.2d 945, 948–949. The definition of "trade secret" has been codified in Ohio and is set forth in R.C. 1333.61(D), which provides:

" 'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

"(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

"(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

The Supreme Court of Ohio has adopted a six-factor test to determine the existence of a trade secret. These factors are "(1) [t]he extent to which the information is known outside the business; (2) the extent to which [the information] is known to [employees] inside the business * * * ; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) *the savings effected and the value to the holder in having the information as against competitors;* (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information." (Emphasis added.) *State ex rel. The Plain Dealer v. Ohio Dept. of Ins.* (1997), 80 Ohio St.3d 513, 524–525, 687 N.E.2d 661, 672, adopting the test set forth in *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 134–135, 7 OBR. 165, 168–170, 454 N.E.2d 588, 591–593.

■ In the case at bar, the trial court found that "Ramco has enjoyed a high level of profitability in comparison with respect to other manufacturers of fasteners. The company has been very successful and sales have grown at an annual rate of 15 to 20% over the years. Ramco now employs 60 people. Ramco's profitability is far beyond the industry norm, in fact it is approximately nine times higher." However, the trial court found that Ramco's success was due to "[t]he combination of using low cost nut blanks[1] produced in Asia, nonunion labor and the Ramco machines."

---

1. A "nut blank" is a standard nut. It becomes a "prevailing torque locknut" when it undergoes a process of distortion, either by being pressed or squeezed.

The trial court also found that "the cost of distorting a raw nut into a locknut is of *minor significance* as compared to the cost of the nut" and that "the monetary exchange rate between Japan and the United States favored Ramco's policy of buying blanks overseas." Moreover, the trial court found that "Ramco is currently not [as] competitive in the market * * * because of current market conditions." Finally, the trial court stated that it was "unable to find that Ramco's prevailing torque locknut machines give it a competitive advantage over others in the industry" and that "the difference between the machines used by [other] companies * * * to convert a raw nut into a prevailing torque locknut are insignificant insofar as giving Ramco an advantage over its competitors in the equipment and process it uses to manufacture the nuts." The trial court concluded that there were "no trade secrets in the Ramco machine or manufacturing process involved."

■■■ The trial court found in favor of Pansegrau because Ramco failed to prove by a preponderance of the evidence that its machines were a trade secret. A trial court's determination whether a machine is a trade secret is a question of fact to be determined by the trial court upon the greater weight of the evidence. *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 47, 24 OBR 83, 87–88, 492 N.E.2d 814, 819. A reviewing court should not substitute its judgment for that of the trial court on factual issues. *Id.* A judgment is against the manifest weight of the evidence if it is " 'so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.' " *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 226, 14 OBR 250, 254, 470 N.E.2d 941, 946, quoting *Royer v. C.R. Coblentz Local School Dist Bd. of Edn.* (1977), 51 Ohio App.2d 17, 20, 5 O.O.3d 138, 140, 365 N.E.2d 889, 892. The record supports the trial court's determination that Ramco's prevailing torque locknut machines did not derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, proper means by other persons who could obtain economic value from its disclosure or use, as required by R.C. 1333.61(D)(1).

Robert Turner, an accountant and consultant to Ramco, testified that Ramco's stockholders' equity grew from $81,000 in 1979 to $3.4 million in 1993. Sales grew from $667,000 in 1979 to $10,600,000 in 1993. Richard Malson testified that Ramco's locknut machine was the "keynote to [Ramco's] success" and that it was "the reason that [Ramco was] able to enjoy high levels of profitability." He further testified that other locknut distorting machines would run much slower and cost more, "so there's a savings, yes, versus other methods." However, on cross-examination, Malson conceded that he did not know whether Ramco's locknut distorting process was better and cheaper and that he could only

"surmise" that the process was better and cheaper. Turner testified that until approximately five years before trial, Ramco's sole business was locknuts. At the time of the trial, locknuts comprised approximately eighty-five percent of Ramco's business, but no separate figures on the effect of the remaining fifteen-percent of Ramco's business on Ramco's profitability were available.

Defendant-appellee Jack Barney testified that foreign competition and lower prices for "nut blanks" had a substantial effect on the locknut business. Paul Moore, a salesman for a nut and bolt distributor, testified for the defense, and his testimony was in accord with Barney's. Of particular interest was Moore's statement that the percentage of costs of the finished goods was "very insignificant to the cost of the nut." In other words, the lower the price of the nut blank, the more profitable the sale of the finished locknut will be to the locknut manufacturer, regardless of the method used to form the locknut. Moore testified that, at the time of the trial, other locknut manufacturers were selling comparable quality locknuts at prices lower than those of Ramco and that Ramco's once competitive prices were based largely on the overseas market for nut blanks.

The existence of conflicting evidence as to whether Ramco's locknut machine gives it an economic advantage does not mean that the trial court's judgment is against the manifest weight of the evidence. Evaluating the evidence and assessing the credibility of witnesses are primarily for the trier of fact. *Fortune v. Medina Cty. Bd. of Commrs.* (Aug. 20, 1997), Medina App. Nos. 2634–M, 2636–M, 2640–M and 2641–M, unreported, at 4, 1997 WL 537674, citing *Ostendorf–Morris Co. v. Sylman* (1982), 6 Ohio App.3d 46, 47, 6 OBR 156, 157–158, 452 N.E.2d 1343, 1345–1346. Absent extreme circumstances, an appellate court will not second-guess determinations of weight and credibility. *Fortune, supra,* at 4.

The trial court's finding that there was no economic advantage is not so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice. Because the trial court's finding that there is no economic advantage in keeping the design of Ramco's locknut machines a secret was not against the weight of the evidence, there is no "trade secret" as defined by R.C. 1333.61(D). Ramco's first, second, and third assignments of error are overruled.

### III. Conspiracy

Ramco's fourth assignment of error is:

"The court below erred in directing a verdict in favor of defendant Barney as not being a conspirator with defendant Pansegrau despite his extensive partic-

ipation in producing and selling locknuts made on a machine he knew constituted a misappropriation of Ramco's trade secrets."

Barney's motion for a directed verdict was made pursuant to Civ.R. 50(A). However, "[w]hen a case is tried without a jury, a motion for judgment at the conclusion of the plaintiff's case is one for dismissal under Civ.R. 41(B)(2)." *Krysa v. Sieber* (1996), 113 Ohio App.3d 572, 579, 681 N.E.2d 949, 953. Civ.R. 41(B)(2) provides:

"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff[.]"

The standards for directed verdict and for dismissal pursuant to Civ.R. 41(B)(2) differ. A directed verdict is based on insufficiency of evidence, while dismissal of the plaintiff's case in a bench trial allows the trial court to weigh the evidence, resolve any conflicts, and render judgment in favor of the defendant if the plaintiff has shown no right to relief. *Krysa, supra,* citing *Bank One, Dayton, N.A. v. Doughman* (1988), 59 Ohio App.3d 60, 571 N.E.2d 442.

The trial court granted Barney's motion for a directed verdict on the basis that there was no evidence that Barney competed unlawfully with Ramco. The trial court also appeared to say that there was no evidence that there had been a prior court determination that Ramco's machine was a trade secret. Ramco argues that a prior court determination of the existence of a trade secret is not required to prove conspiracy to misappropriate a trade secret and that the issues of conspiracy, misappropriation, and existence of a trade secret can be decided in the same action. We agree, but this does not dispose of Ramco's fourth assignment of error. Assuming, *arguendo*, that there was error in the trial court's action after Ramco presented its case, we would still affirm the resolution of the case at that point in favor of Barney.

"Civil conspiracy in Ohio is 'a malicious combination of two or more persons to injure another in person or property in a way not competent for one alone, resulting in actual damages.'" *Gosden v. Louis* (1996), 116 Ohio App.3d 195, 219, 687 N.E.2d 481, 496. An underlying unlawful act is required for civil conspiracy. *Id.,* citing *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 195, 26 O.O.2d 359, 359–360, 193 N.E.2d 280, 280–281.

Because we have determined that there was no trade secret, it follows that there could not have been a conspiracy to misappropriate a trade secret. In

other words, there was no underlying unlawful act as is required for civil conspiracy. We are empowered to affirm the judgment of the trial court on grounds other than those relied upon by the trial court. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309. Therefore, Ramco's cause of action for civil conspiracy must fail even if the other elements of civil conspiracy had been proven by Ramco. We do not decide, however, whether Ramco proved the additional elements. It is enough that Ramco failed to prove the existence of a trade secret. Ramco's fourth assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE and DICKINSON, JJ., concur.