This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, ProCare Automotive Service Solutions ("ProCare"), appeals from the judgment entered in the Summit County Court of Common Pleas in favor of Appellee, ALH Properties ("ALH"), and against ProCare, for the reckless trimming of trees in violation of R.C. 901.51. We affirm.
 I.
ProCare and ALH are adjoining landowners in Fairlawn, Ohio. ALH operates an office building on its property for a real estate appraisal firm and other professional entities. ProCare operates an automotive repair facility on its property.
There is a row of large Norway spruce trees near the property line dividing the two properties. The trees provide a visual buffer between the two premises. It is undisputed that these trees are on ALH's property, although some of the branches extend over ProCare's property. In June 2000, ProCare cut branches off of the lower ten feet of the spruce trees, destroying the visual buffer. The branches will not grow back.
ALH filed a complaint in the Summit County Court of Common Pleas pursuant to R.C. 901.51, alleging that ProCare had recklessly injured the trees on ALH's property. On January 22, 2002, the parties tried the case before the court. The trial court entered judgment in favor of ALH and against ProCare, and awarded damages in the amount of $34,200.00. This appeal followed.
ProCare raises four assignments of error, which we have rearranged for ease of review.
 II. Second Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT IN NOT DISMISSING PLAINTIFF-APPELLEE'S COMPLAINT AT THE CLOSE OF PLAINTIFF-APPELLEE'S CASE IN CHIEF."
In its second assignment of error, ProCare challenges the trial court's denial of its motion for directed verdict, made at the close of ALH's case in chief. ProCare asserts that ALC failed to introduce sufficient evidence to meet all of the elements of the action, specifically, recklessness, and, therefore, ProCare's motion for directed verdict should have been granted. We disagree.
We begin our discussion by noting that a motion for directed verdict pursuant to Civ.R. 50 is inappropriate in a non-jury trial. Tewarson v.Simon (2001), 141 Ohio App.3d 103, 115. Instead, the proper motion for judgment at the conclusion of the plaintiff's case in a bench trial is one for dismissal pursuant to Civ.R. 41(B)(2). Ramco Specialties, Inc.v. Pansegrau (1998), 134 Ohio App.3d 513, 520. A motion for directed verdict, made at the close of a plaintiff's case in a bench trial, will be deemed to be a motion for involuntary dismissal under Civ.R. 41(B)(2), and we review the trial court's ruling as such. In re Estate ofFugate (1993), 86 Ohio App.3d 293, 296-297.
The standards for a Civ.R. 41(B)(2) dismissal at the close of plaintiff's case and a directed verdict differ. Ramco Specialties, Inc.,134 Ohio App.3d at 520. A motion for directed verdict challenges the sufficiency of the evidence, and when ruling on such a motion, the trial court is required to view the evidence in the light most favorable to the nonmoving party. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257; Civ.R. 50(A)(4). In contrast, when the trial court rules on a motion for involuntary dismissal under Civ.R. 41(B)(2), the court weighs the evidence, resolves any conflicts, and may render judgment in favor of the defendant if the plaintiff has shown no right to relief. RamcoSpecialties, Inc., 134 Ohio App.3d at 520; Civ.R. 41(B)(2). "Where plaintiff's evidence is insufficient to sustain plaintiff's burden in the matter, the trial court may dismiss the case." (Emphasis sic.) Fugate,85 Ohio App.3d at 297.
The trial court's conclusions will not be set aside unless they are erroneous as a matter of law or against the manifest weight of the evidence. Jacobs v. Bd. of County Cmmrs. (1971), 27 Ohio App.2d 63, 65. See, also, Tewarson, 141 Ohio App.3d at 115. When an appellant challenges the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born, (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." State v. Thompkins
(1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
Accordingly, in order for an appellate court to reverse a decision as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
R.C. 901.51 provides:
 "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
 "In addition to the penalty provided in section 901.99
of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."
R.C. 901.99 provides that a person who violates R.C. 901.51 is guilty of a misdemeanor of the fourth degree. Recklessly, as used in R.C. 901.51, has the same meaning in a civil claim for treble damages as it does in a criminal proceeding for violation of the statute. Wooten v. Knisley
(1997), 79 Ohio St.3d 282, 289.
"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
A privilege existed at common law, such that a landowner could cut off, sever, destroy, mutilate, or otherwise eliminate branches of an adjoining landowner's tree that encroached on his land. Murray v.Heabron (C.P. 1947), 35 O.O. 135, 135.
Because ProCare challenges the denial of its motion for involuntary dismissal, in which the trial court reviewed the evidence presented in ALH's case in chief, our review of this assignment of error is limited to the evidence ALH presented. Howard Myers, the managing partner of ALH, testified that when he returned to the office after lunch one day in June 2000, he noticed someone cleaning up debris from under the spruce trees. ProCare had trimmed the branches of the trees that faced ProCare's property, as well as branches facing all other directions, including some that faced ALH's property. Myers stated that he had not given anyone permission to trim the trees, although he did not know if anyone else in his building had given permission. He further testified that he had previously trimmed branches that hung over his parking area and had removed one of the trees entirely because it died.
ALH also admitted a videotape into evidence, which Myers had taken on the day ProCare trimmed the trees. The tape contains Myers' commentary as he films the damage done to the trees. He indicates where the property line is located. On one end of the row of trees, the property line is clearly marked with a large post. Pictures taken both before and after ProCare trimmed the branches were admitted into evidence. ProCare stores old tires, oil cans, and a dumpster in the area near the trees. The pictures taken before the trimming indicate how the trees created a visual buffer from ProCare's property, as well as from Summit Mall located across the street from ProCare. Myers testified that the row of spruce trees also helped to alleviate some of the noise from traffic.
Given the evidence presented in ALH's case in chief, we cannot say that the trial court's denial of a motion for involuntary dismissal was against the manifest weight of the evidence. There was evidence to show that ProCare disregarded a known risk with heedless indifference to the consequences when it trimmed the branches, when those trees were clearly on ALH's property. Accordingly, ProCare's second assignment of error is overruled.
 First Assignment of Error "THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE DEFENDANT-APPELLANT, IN FINDING THAT THE DEFENDANT-APPELLANT ACTED RECKLESSLY PURSUANT TO OHIO REVISED CODE § 901.51 IN TRIMMING THE PINE TREES AT ISSUE HEREIN."
 Third Assignment of Error "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN FINDING THAT THE DEFENDANT-APPELLANT TRIMMED THE SUBJECT TREES WITHOUT PRIVILEGE, PURSUANT TO REVISED CODE § 901.51."
ProCare's first and third assignments of error require a related analysis; therefore, we address these assignments of error together. In its first assignment of error, ProCare challenges the trial court's final determination that it acted recklessly in trimming the pine trees. The third assignment of error challenges the finding that ProCare acted without privilege. In both of these assignments of error, ProCare asserts that the judgment is against the manifest weight of the evidence.
In addition to the evidence that ALH presented in its case in chief as noted above, the following evidence was presented. Martin Long, a manager at ProCare, testified that he thought the spruce trees were on ProCare's property and that he assumed the trees were ProCare's because "nobody ever took care of them." He stated that he trimmed other branches hanging over ProCare's property on two previous occasions with no negative consequences. He also stated that in the spring, ProCare would place mulch by the trees, and no one ever told him that the trees were not on ProCare's property.
Long stated his belief that only limbs that faced a direction other than toward ALH's property were cut off. He stated that when Myers approached him about ProCare trimming the trees, it was the first indication he had that the trees were not on ProCare's property. On cross-examination, Long admitted that when the spruce that was dying was removed, he did not know who removed it, but he did know that he, personally, had not directed anyone to remove it, nor did he have to pay for its removal. He stated that he "figured it was Mr. Myers that made the decision to have it removed" because the tree may have hit Myers' building if it fell. Long stated that he "felt [Myers] had it removed, which was fine by [him]."
Long also testified that the trees were trimmed because the limbs hung over the parking lot, the trees dripped sap on cars, and because it gave ProCare more area for parking.
The trial court found that the removal of the tree branches was reckless because Long had reason to know facts that would lead a reasonable person to question whether the trees belonged to ProCare. The trial court noted that the complete removal of a large spruce tree in this row of trees at no expense or trouble to ProCare was an indication that ProCare did not own the trees nor were they responsible for maintaining them. The trial court also noted that Long's testimony that the only branches cut were those which overhung ProCare's property was disputed by the videotape and photographs which clearly showed other branches were cut that did not overhang ProCare's property.
Although some of the testimony may have been in conflict, we decline to overturn the judgment because the court believed ALH's witnesses. Matters of credibility are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. We find no indication that the trial court lost its way and committed a manifest miscarriage of justice in entering judgment in favor of ALH. Accordingly, ProCare's first and third assignments of error are overruled.
 Fourth Assignment of Error "THE TRIAL COURT ERRED IN AWARDING COMPENSATORY DAMAGES TO THE APPELLEE IN THE AMOUNT OF $11,400[.]"
In its final assignment of error, ProCare asserts that the trial court's calculation of damages is against the manifest weight of the evidence.
Myers testified that soon after ProCare trimmed the trees and destroyed the visual buffer between the two properties, he contacted two landscaping companies to install arborvitae to replace the barrier. Paul Revoldt, the manager of the landscaping department of R.B. Stout, Inc., testified that Myers contacted him about planting arborvitae underneath the spruce trees. Revoldt submitted a quote for $3850 to plant 35 arborvitae. He stated he did not recommend planting arborvitae underneath the spruce because arborvitae require full sun, and over time, the arborvitae would thin out and not provide an adequate screening. He also stated that it was impractical to replace the spruce trees with ones of a similar size, given the 60-foot height of the spruce trees. Revoldt gave Myers another quote of $18,923 to remove the Norway spruce trees, grind the remaining stumps, and plant a row of Colorado spruce. Revoldt testified that there is very little difference in cost between Colorado spruce and the Norway spruce, but in Revoldt's opinion, the Colorado spruce would provide a better screen.
George Michaels, a landscape contractor, testified on behalf of ProCare. He gave a quote of $3750 to plant a row of arborvitae, stating that it would provide an adequate screening between the properties. Michaels also provided a quote of $12,200 to remove the Norway spruce, grind the stumps, and plant Colorado spruce. In his opinion, Colorado spruce would not provide an adequate barrier because they would eventually grow similar to the spruce that are currently on ALH's property and they cannot be pruned properly. He recommended planting White Pine instead of Colorado Spruce, because White Pine can be pruned and trimmed more easily than the spruce. His estimate to plant a row of White Pine was $11,400.
The trial court found that the best solution to replace the natural visual screening between the two properties was to replace the trees. The court found that replacing the current trees with Colorado spruce was a disproportionate expense, and to replace them with White Pine was a reasonable restoration of ALH's property; therefore, the trial court awarded damages of $11,400. The amount was then trebled pursuant to R.C.901.51, for a total award of $34,200. Given the testimony, we cannot say that the trial court's determination was against the manifest weight of the evidence. Accordingly, ProCare's fourth assignment of error is overruled.
 III.
Having overruled ProCare's assignments of error, we affirm the decision of the Summit County Court of Common Pleas.
CARR, J., WHITMORE, J. CONCUR.