JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Paradise Fiberglass Pools, Inc., appeals the decision of the Cuyahoga County Common Pleas Court denying its motion for directed verdict and entering judgment in favor of plaintiffs-appellees, Hinda and Irwin Apple, on their complaint for breach of contract. For the reasons that follow, we affirm in part, reverse in part and remand this case to the trial court on the issue of damages.
 {¶ 2} The record reveals that the Hinda Apple ("Ms. Apple") entered into a contract with defendant-appellant, Paradise Fiberglass Pools, Inc. ("Paradise Pools"), sometime in June 1998 for the installation of a one-piece fiberglass pool, which the Apples had purchased from defendant, Water World, Inc. ("Water World"). According to the terms of the contract, Paradise Pools was responsible for, inter alia, excavating the land, setting the pool in the ground and pouring a concrete deck around the pool. The Apples, on the other hand, were responsible for checking the "location, size, shape, and elevation" before excavation. In order to do so, Ms. Apple testified that she hired an architect to prepare an architectural plan, which, in any event, was required by the city of Pepper Pike ("City"), where the Apples lived and the pool was to be installed. The Apples were further responsible, inter alia, for any grading work outside the concrete deck area.
 {¶ 3} Installation was substantially complete sometime in November 1998 and, as such, the pool was not available for use until the following year. Notwithstanding, Ms. Apple began noticing defects in the pool and/or its installation. In particular, she noticed a "buckling inward" along the sides of the pool. Moreover, whenever it rained, mud and other debris ran into the pool.
 {¶ 4} In August 1999, Ms. Apple sent a letter to Paradise Pools listing what she terms were "uncorrected items" previously brought to the attention of Paradise Pools. In compiling the list of alleged deficiencies, Ms. Apple stated that she engaged the services of "a pool maintenance company, pool cement installers, a structural engineer, a surveyor, the Building Inspector of Pepper Pike, the pool manufacturer, and a landscaper." Included among the more than 20 items listed was the statement that the City "had refused to issue an operating permit for the pool due to substantial defects." Summarizing the allegations contained in her letter, she stated:
 {¶ 5} "* * * [W]e presently have a buckled pool with a hole in it, with only half its filter systems working and which fills with muddy water after every heavy rain and then cannot be used for days. Our deck is cracked, too rough and the sand is both settling down and washing out from beneath it. The sand has slumped down the sides of the shell and made the sides lumpy, and created cavities under the deck and behind the liner. The pool foundation is swamped. We have had to do such basic work as installing waste lines and hooking up pumps and pump lines."
 {¶ 6} The Apples thereafter employed their landscape designer, Mary Sliwinski, to remove the concrete deck and the pool. Ms. Sliwinski, after first obtaining the installation instructions from Water World's website, then reinstalled or directed the reinstallation of the pool according to the manufacturer's directions. She testified that she was paid $10,924 for her efforts, of which $850 was attributed to upgrades requested by Ms. Apple.
 {¶ 7} In September 1999, the Apples filed a two-count complaint for breach of contract against Paradise Pools and Water World.[1] At the bench trial that followed, the Apples attempted to present the testimony of civil engineer, Amir Fazraneh, but the trial court disqualified this witness as an expert on the basis that he had no expertise in the installation of pools. Besides the testimony of Ms. Apple as to the problems associated with the pool's installation, Ms. Sliwinski testified as to several of the allegations contained in Ms. Apple's August 6th letter to Paradise Pools. Paradise Pools moved for a directed verdict at the close of the Apple's case, which the court denied. Paradise Pools thereafter presented the testimony of Ken Hope, the cement subcontractor, and Robert Thompson, president of Paradise Pools. Paradise Pools again moved for a directed verdict, which the court again denied.
 {¶ 8} The trial court eventually found in favor of the Apples and awarded them $10,074 in damages, which is $850 less than the $10,924 paid to Ms. Sliwinski. In its findings of fact and conclusions of law that followed, the court concluded that Paradise Pools had breached the contract because it "did not conform with the site plan or city permit when the pool was installed." The damage award was justified as being in the "interests of justice and equity" and representative of the amount the Apples "requested to bring the pool installation into conformity with the contract." Paradise Pools is now before this court and assigns four errors for our review.[2]
 I. {¶ 9} In its first two assignments of error, Paradise Pools challenges the trial court's decision denying its motions for directed verdict; the first one made at the close of the Apples' evidence and the second one made at the close of all evidence.
 {¶ 10} We note preliminarily that a motion for a directed verdict pursuant to Civ.R. 50 is inappropriate in a non-jury trial. Tewarson v.Simon (2001), 141 Ohio App.3d 103, 115; see, also, Ritchie v. Weston,Inc. (2001), 143 Ohio App.3d 176, 179; Pochatek v. Minoff (July 20, 1995), Cuyahoga App. No. 67933, 1995 Ohio App. Lexis 3040. The proper motion for judgment at the conclusion of a plaintiff's case in a bench trial is one for dismissal under Civ.R. 41(B)(2). Ramco Specialties,Inc. v. Pansegrau (1998), 134 Ohio App.3d 513, 520. We, therefore, will construe a motion for directed verdict made at the close of a plaintiff's case in a bench trial as one for involuntary dismissal under Civ.R. 41(B)(2) and review the court's ruling as such. In re Estate of Fugate
(1993), 86 Ohio App.3d 293, 296-297.
 {¶ 11} In ruling on a motion for involuntary dismissal under Civ.R. 41(B)(2), the court weighs the evidence, resolves any conflicts and may render judgment in favor the defendant if the plaintiff has shown no right to relief. Ramco Specialties, Inc., 134 Ohio App.3d at 520; see, also, Civ.R. 41(B)(2). Upon review, an appellate court will not reverse a trial court's ruling on such a motion unless it is erroneous as matter of law or against the manifest weight of the evidence.[3] Jacobsv. Bd. of Cty. Cmmrs. (1971), 27 Ohio App.2d 63, 65. In determining whether a ruling is against the manifest weight of the evidence, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the factfinder clearly lost his way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. If the judgment is supported by some competent, credible evidence, it cannot be against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
 {¶ 12} With this standard of review in mind, we will review Paradise Pool's first two assignments of error as well as its third assignment of error, which challenges the trial court's decision as being against the manifest weight of the evidence.
 {¶ 13} Paradise Pools argues that appellees failed to present evidence demonstrating that it was necessary to incur additional expense by raising the pool in order to correct the alleged deficiencies in its installation. In support of its argument, Paradise Pools relies onWilliam J. Ware Plumbing Heating, Inc. v. United States Fid. Guar. Co. (Feb. 26, 1981), Cuyahoga App. No. 42586, for the proposition that without testimony to support that repairs are necessary there is no proof of the extent of damage and an action for breach of contract fails. In that case, the Cleveland Metropolitan Housing Authority ("CMHA") claimed that a plumbing subcontractor severed an existing electrical cable, which CMHA alleged resulted in it incurring significant repair costs. The Ware court opined that because no witness testified as to the condition of the damaged cable prior to repairs, i.e. no witness testified that he or she observed the damaged cable or observed the extent of damage to the cable, there was no proof that the repairs were necessary and, therefore, CMHA was not entitled to recover on its breach of contract claim.
 {¶ 14} That is not the case here. Ms. Sliwinski testified that she observed the buckling of the pool and observed the settling of the sand backfill at the sides of the pool shell. Consequently, there was competent testimony that the pool was in need of repair thereby supporting the extent of damage.
 {¶ 15} Notwithstanding this conclusion, however, we find that there is insufficient proof to support the damages awarded by the court. Ordinarily, the cost of repairs is the proper measure of damages for construction defects. Barton v. Ellis (1986), 34 Ohio App.3d 251, 253. In other words, the proper measure of damages is the reasonable cost of placing the structure in the condition contemplated by the parties at the time they entered into the contract. Sites v. Moore (1992),79 Ohio App.3d 694.
 {¶ 16} Here, the Apples merely presented Ms. Sliwiniski's testimony as to the total amount paid to her for the removal the pool and its reinstallation. There was no testimony as to what that final figure represented or how she arrived at the amount as the cost of repair. Moreover, there was no evidence supporting that anything less than full removal of the pool and reinstallation was necessary to place the structure in the condition contemplated by the parties.
 {¶ 17} Consequently, appellant's first three assignments of error are overruled to the extent that there was competent credible evidence to support judgment in favor of the Apples on their breach of contract claim, but sustained as to the award of damages where there was insufficient evidence to support that award.
 II. {¶ 18} In its fourth assignment of error, Paradise Pools contends that it was error for the trial court to admit the Pepper Pike Building Inspection Summary, which included on its reverse side a sequential series of handwritten notes for each date that a building inspector visited the site. The final notation of which was July 13, 1999 wherein it was written, "not approved, the deck pour is bad and surface water runs into the pool." Paradise Pools argues that the statement is hearsay and inadmissible.
 {¶ 19} Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Unless a valid exception applies, hearsay is inadmissible. Evid.R. 802.
 {¶ 20} Appellees contend this document is not hearsay because it is a public record under Evid.R. 803(8) and therefore not excluded under the hearsay rule. This rule includes "[r]ecords, reports, statements * * *, in any form, of public * * * agencies, setting forth * * * matters observed pursuant to duty imposed by law as to which matters there was duty to report * * * unless the sources of information or other circumstances indicate lack of trustworthiness."
 {¶ 21} Here, the one page building inspection summary is a pre-printed form that contains space for providing information regarding the structure to be built as well as the date, location, owner's name and relevant permit application information. The City certified that this summary is a true and accurate copy of the same taken from its building department records.
 {¶ 22} We agree with appellees that the inspection summary form is a public record because it is a record made pursuant to the requirements of the City's building code and represents the City's building department's efforts to insure that any structure built within its city satisfies that code. See Brown v. Enderle (Sept. 24, 1986), Hamilton App. No. C-850853, 1986 Ohio App. Lexis 8395. The summary form is, therefore, a record setting forth a matter it has a duty to observe and report.
 {¶ 23} The same cannot be said, however, of the reverse side of this form, which contains the handwritten notes containing information relative to the site visits on the particular dates noted. The form itself makes no reference to the notes as being a part of this record nor does the form contemplate that the inspector make such a record. To the contrary, it appears that these notes merely record the respective inspectors' observations during the course of an inspection.
 {¶ 24} We, therefore, agree that while the inspection summary form itself satisfies the definition of a public record or report under Evid.R. 803(8), the reverse side of that form does not. It was, therefore, error for the trial court admit the inspectors' notes contained on that reverse side. Nonetheless, the error is harmless under Civ.R. 61 in that its admission does not affect the substantial rights of the parties.
 {¶ 25} "Generally, in order to find that substantial justice has been done to an appellant so as to prevent reversal of a judgment for errors occurring at the trial, the reviewing court must not only weigh the prejudicial effect of those errors but also determine that, if those errors had not occurred, the jury or other trier of the facts would probably have made the same decision." Hallworth v. Republic Steel Corp.
(1950), 153 Ohio St. 349, paragraph three of the syllabus. Had this error not occurred, competent credible evidence was before the trier of fact to support its finding that Paradise Pools breached its contract in installing the pool for the Apples. See Cincinnati v. Banks (2001),143 Ohio App.3d 272, 290. Consequently, the admission of this evidence was not prejudicial and, therefore, the error was harmless.
 {¶ 26} Appellant's fourth assignment of error is not well taken and is overruled.
 III. {¶ 27} In summary, the judgment of the trial court is affirmed, in part, and reversed, in part, and remanded for the purpose of determining the proper award of damages.
 {¶ 28} This cause is affirmed in part; reversed in part and remanded for proceedings consistent with this opinion.
It is ordered that appellant and appellees equally share costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., AND ANN DYKE, J., CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Water World failed to enter appearance in this action and the trial court entered an order of default judgment against it in the amount of $12,744 plus $1,077.80 in attorney fees.
[2] The Apples cross-appealed but failed to file a brief as required by App.R. 18. Consequently, their cross-appeal is dismissed. See App.R. 18(C).
[3] Review of a ruling on a motion for directed verdict, on the other hand, challenges the sufficiency of the evidence and requires a reviewing court to view the evidence in a light most favorable to the nonmoving party. Wagner v. Midwestern Indemn. Co. (1998), 83 Ohio St.3d 287, 294. Neither the credibility of witnesses nor the weight of the evidence is considered by an appellate court. Id.