Chittenden, J.
This action was brought in the common pleas court and was based upon the rescission of a contract involving the purchase of sixty shares of the capital stock of the defendant company. The prayer was for the recovery of the amount paid for such stock. There was included in this action a claim for some unpaid salary and an amount claimed to be due for salary, represent *203 ing the difference between the amount that had been paid to the plaintiff under the terms of his employment, and what he'alleges to be the reasonable value of such services. This latter feature of the action is not of great importance in disposing of the case.
Upon the trial, at the conclusion of the plaintiffs evidence, the court directed the jury to return a verdict in favor of the defendant, which was accordingly done and judgment was entered upon such verdict. The principal question presented upon the error proceedings is whether the court was right in directing a verdict in favor of the defendant. A disposition of the case calls for a construction of the written contract entered into by and between the plaintiff and the defendant. This contract is as follows:
“Toledo, Ohio, October 28, 1914. “Mr. H. W. Buschmeyer,

“'Chicago, III. . '

“Dear Sir:—
“You are to start in about November 9th, 1914.
“You are to be a director and to be elected treasurer at the earliest possible moment, consistent with our bylaws.
“For the first month your salary is to be $100.00. For the balance of the year, not less than $110.00 per month.
“Thereafter your salary shall be arranged by the board of directors but shall be increased to $150.00 per month as soon as you can relieve Miss Gill and Mr. Gaughen of their work and handle it with the help of Mr. A. B. Taggart. ,
*204 “You are to buy at par six thousand dollars ($6000.00) worth of the stock of The Advance Machinery Company, five thousand dollars ($5000.00) of which is to be turned over to The Advance Machinery Company, the balance, one thousand dollars ($1000.00) to be turned over to Miss Gill.
“The above stock to be surrendered by P. P. ITunter $2500.00 and J. A. Taggart $3500.00.
“Yours very truly,
“Ti-ie Advance Maci-iinery Co., “Per /. A. Taggart, Pres.
“Accepted.”
It is urged in the first place that certain evidence sought to be introduced is incompetent because of the rule that the terms of a written contract may not be varied by parol evidence. This rule is elementary, but its application does not preclude the application of another fundamental rule for the construction of contracts, namely, that the court shall view such contract as nearly as possible from the standpoint of the parties to such contract, so that the intention- of the parties may be more clearly obtained from the words of the written instrument. The importance and purpose of this rule are well stated by Judge Sanborn in Kauffman v. Raeder, 108 Fed. Rep., 171, 175, where he says:
“It will be conducive to brevity and perspicuity to obtain a clear idea of the relations of the parties to the agreement to be considered, their respective covenants therein, and the moving considerations which induced'them to make their stipulations, before entering upon the discussion of this issue. *205 This conception must be secured by the light of the fundamental rule that the situation of the parties when the contract was made, its subject-matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and that when these are ascertained they must prevail over the dry words of the stipulations.”
Or, as is said by the supreme court in Merchants National Bank v. Cole, 83 Ohio St., 50:
“ * * * The surrounding circumstances may be proven, not to contradict or vary the terms of the writing but to enable the court to put itself in the place of the parties the better to understand the terms employed in the writing and to arrive at the mutual intention of the parties.”
Cases might be cited in support of this proposition from all the states in the Union, and from the federal courts. We will add only the following citations: Carnig v. Carr, 167 Mass., 544, 547; C., R. I. & P. Ry. Co. v. D. & R. G. Rd. Co., 143 U. S., 596, 609, and Cambria Iron Co. v. Keynes et al., 56 Ohio St., 501, 513.
Evidence was sought to be introduced tending to show the relations of the parties just prior to and at the time of entering into the above contract, and conversations had between the president of the company and the plaintiff, for the purpose of enabling the court to ascertain the intentions of the parties in the execution of this instrument. Some of this evidence was excluded and we think its ex-' elusion was error, but such errors were very largely, if not entirely, cured by the fact that the court afterwards admitted substantially all the evi *206 dence that was sought to be introduced upon the subject. The evidence shows substantially the following facts:
The plaintiff at the time of entering into this contract was about fifty years of age. He was born in the city of Chicago and had lived there all his life up until about November, 1914, when he moved with his family to Toledo. He was a bookkeeper by profession and had during all his life occupied office positions. For about fourteen years, namely from 1899 to 1913, he had been bookkeeper for a large manufacturing company. During the last six or seven years of that -time he had also held the position of secretary of that company, and for the last eight years had been head bookkeeper. He had been out of employment approximately a year when he observed an advertisement of the defendant company in a Chicago paper, which he answered. As a result thereof he came to the city of Toledo and had a conference with the president of the defendant company, which finally resulted in the execution of the contract above quoted. Pursuant to this contract he came to Toledo on about the 8th of November, 1914, and he was on the following day elected acting treasurer for the company. The minutes of the meeting of the directors of November 9th contain the following paragraph:
“It was moved by James Taggart and seconded by E. N. Gill that Mr. Buschmeyer be appointed acting treasurer to hold such office for the balance of the year at the end of which he is to be elected treasurer of the company in accordance with the contract'under which he invested in the company.”
*207 Mr. Buschmeyer entered upon the performance of his duties and sixty shares of the capital stock of the company were issued to him in accordance with the terms of the contract for which he paid six thousand dollars. On the 19th day of January, 1915, at the annual meeting of the company, Mr. Buschmeyer was “elected treasurer for the ensuing year,” as shown by the minutes of that meeting. He continued in the performance of his duties and, as he claims, assumed the duties of Miss Gill and Mr. Gaughen as contemplated by the contract.
At a meeting of the board of directors on June 28, 1915, one J. S. Clark was employed to perform all the duties that had theretofore devolved upon the plaintiff, and it was ordered that'the plaintiff’s salary should cease on and after June 30th. The plaintiff refused to concur in this action of the board of directors. At or about the same time the president of the company informed the plaintiff that his connection with the company would cease on and after July 1, 1915. Plaintiff continued his services until the evening of June 30, 1915, and thereafter presented himself at the office of the company and offered to- continue the performance of his work, but he was not permitted to do so. On July 13, 1915, the plaintiff wrote the defendant advising it in effect that -he considered its action a repudiation of his contract and he returned, therefore, to the defendant with his letter the certificates -of stock representing the sixty shares that had been issued to him, together with his resignation as director and treasurer of the company, and demanded of the defendant that it *208 repay to him his six thousand dollars which he had paid for the stock. The defendant at a special meeting of its board of directors on July 20th, accepted the resignation of the plaintiff, but declined to accept the return of the stock, and returned the certificates to the plaintiff with a refusal to repay the six thousand dollars or any part thereof. Subsequent proceedings with reference to the stock are not material. Thereafter in August this suit was begun.
'Reverting for a moment to the conversations between the plaintiff and the president of the defendant company, prior to the execution of the contract, it is found that at those conferences the plaintiff related to the president of the company his previous business experience and advised him that he was at that time out of employment; that he had accumulated some capital from the savings from his salary; and that he was desirous of investing in some company, but only upon condition that he would be given employment that would enable him to make a livelihood, and that his employment should be in such a position as would permit him to watch his- investment and have an opportunity to make a success of the business. The language of the plaintiff as shown in the bill of exceptions is as follows:
“I said that I would not make any investment in the company unless it was- understood that I would permanently be connected with the company and in such a position where I could watch my investment and have an opportunity to make a success of the business.”
*209 This condition seemed to be entirely satisfactory to the president of the company. The evidence shows that at this conversation the plaintiff was informed that the stock had never paid a dividend. It will be observed that the written contract is silent as to the length of time the employment was to continue. It only states when the employment was to begin, namely, on or about November 9, 1914.
We think it entirely clear from the facts as above related that the plaintiff was not a capitalist who was seeking a profitable investment in the capital stock of a corporation, but that he was a professional office man, who had reached an age where it is common knowledge it is not easy to obtain employment in competition with equally capable younger men; and that he was willing to purchase with his savings stock in a company which would insure him employment that would enable him to earn a reasonable salary, and where at the same time he might watch the investment of his savings. We conclude, therefore, that the clause of the contract providing for his employment at the salaries named in the contract was the most important -and vital provision in the contract, so far as the plaintiff was concerned, and that the purchase of the stock would not have been made except for such agreement for employment; that the purchase of the stock was so dependent upon the agreement to employ that they become dependent provisions of an entire contract; and that a breach of the agreement for employment would be the breach of such an important member of the contract as to go to the root of the contract and amount to a discharge *210 of the same if so treated by the other party thereto. We think that where there is such a breach of a material and vital condition of a contract the other party thereto may either treat the contract as terminated and rescind it and pursue the remedy that such rescission entitles him to, or he may sue for damages for a breach of the contract. 3 Page on Contracts, Sections 1569, 1596 to 1599; Wellston Coal Co. v. Franklin Paper Co., 57 Ohio St., 182.
Acting upon this right of rescission the plaintiff asks recovery for the amount paid for the capital stock, after having made tender of the certificates. It remains to be determined whether the' evidence tends to show such a breach of the contract on the part of the defendant as justifies a rescission on the part of the plaintiff. The defendant by its answer alleges that the plaintiff was incompetent and incapable of performing the duties that he undertook to perform. The record, however, is silent upon the claims of the defendant in this respect for the reason that it never became necessary, in view of the action of the court, for the defendant to introduce any evidence. The evidence on behalf of the- plaintiff tends to show that he was capable and was performing all the duties that had devolved upon him as treasurer and director of the defendant company, and that his discharge was without any fault or failure upon his part to properly perform such duties.
It is contended that the term of employment being indefinite in character the defendant might rightfully discharge the plaintiff at any time. As has been stated, the written contract is silent as to the duration of the employment, but on the trial *211 the plaintiff offered competent evidence tending to show that it was contemplated by both parties to the contract that the employment was to be permanent in character. It does not become necessary in disposing of the case to determine the exact meaning of that term. It at least must mean that the employment was to be for a reasonable length of time. The plaintiff had invested a large amount of money in the defendant company for the purpose of securing such employment. He removed with his family from the city' where they had always theretofore lived, to a strange city, and it must be held that the parties contemplated more than a mere temporary employment. He was to be elected a director and treasurer of the company, the latter office carrying with it the duty of taking charge of all the books of the company. The bylaws of the company provided that such office was to be for the term of a year. The board of directors in electing the plaintiff acting treasurer on November 9, 1914, set forth that he was, at the annual meeting, to be elected treasurer “in accordance with the contract under which he invested in the company,” and on January 19, 1915, he was elected treasurer “for the ensuing year.” ’ These facts show an interpretation put upon the contract by the defendant to the effect that a reasonable time would not be less than one year from January 19, 1915, the date of the annual meeting, and we hold that he could not be discharged except for cause, before January 19, 1916. The contract, so far as the plaintiff was concerned, had been fully performed on his part up to the time of his discharge, as shown by the bill of exceptions. He had *212 paid in the money required of him to be paid and had proceeded in the discharge of his duties. When a contract has been executed on one side the law will not permit the injustice of the other party retaining the benefit without fully performing the obligations upon his part to be performed. We find no such indefiniteness in the contract as presents an insuperable difficulty in adjusting the rights of the parties. Silver v. Graves, 210 Mass., 26, 30, and Wellston Coal Co. v. Franklin Paper Co., supra.
It is claimed by defendant in error that the decision of the common pleas court is in accord with the case of Stunt v. The Newark Weldless Tube & Steel Company, 22 C. C., 120, affirmed, without opinion, 67 Ohio St., 555. What the facts before the court in that case were is not made entirely clear by the opinion of the court, but it seems quite certain from, the statement of the court, and their discussion, and from the cases cited as the authority upon which they rested the decision in the case, that the capital stock involved in that action was what might be denominated initiatory or organization stock. The rule as to such stock is, without exception, we think, that it is against public policy and fair dealing among the subscribers thereto to permit any condition to be attached to the subscription. However, the court found under the .facts in that case that the- condition of employment was a separate and distinct stipulation in' the contract of subscription, and that the subscription was not dependent thereon, and the breach of such a stipulation would give rise only to an action for damages. We find under the facts in the instant *213 case that the transaction between the plaintiff and the defendant was not a subscription to organization stock containing a stipulation, but that it was a conditional sale of stock by a corporation in being and at the time owning and operating its manufacturing plant, and that upon a breach of the condition which we find to be material and vital, the plaintiff might rescind and maintain an action to recover the price paid.'
The court excluded evidence as to the expense incurred by the plaintiff in removing from Chicago to Toledo. We think that this was purely an item of damage arising out of the breach of the contract, and this action is distinctly asserted by the plaintiff not to be founded upon damage but upon rescission and the right to recover the amount paid for the stock under the contract. We think the court was not in error in excluding this evidence, nor in excluding evidence as to the difference between the amount paid for salary in accordance with the action of the board of directors and the amount which plaintiff asserts such services to be worth.
We find that the court was in error in directing a verdict in favor of the defendant, for the reasons .hereinbefore stated, and the judgment will be reversed and the cause remanded for new trial.

Judgment reversed, and cause remanded.

Richards, J., concurs.