UNITED STATES CONSTRUCTION CORPORATION et al., Appellants,

v.

HARBOR BAY ESTATES, LTD. et al., Appellee.

[Cite as *United States Constr. Corp. v. Harbor Bay Estates, Ltd.*, 172 Ohio App.3d 609, 2007-Ohio-3823.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

No. OT–06–019.

Decided July 27, 2007.

610

John E. Breen, for appellants.

Erik G. Chappell, for appellee.

Osowik, Judge.

{¶ 1} This is an appeal from a judgment of the Ottawa County Common Pleas Court, which granted a motion for directed verdict in favor of appellee, Harbor Bay Estates, Ltd. The trial court dismissed all claims filed by appellants and granted partial summary judgment in favor of appellee on his counterclaim in the amount of $45,000. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} The following undisputed facts are relevant to the issues raised on appeal. Appellant United States Construction Corporation ("USCC") is a Florida corporation registered in Ohio as a real-estate-development company. In December 1999, USCC acquired an undeveloped tract of land in Ottawa County, Ohio. This property did not contain utility service.

{¶ 3} On July 31, 2003, USCC transferred this land to appellant The Cove on the Bay L.L.C. ("The Cove"). This land was developed into The Cove, a residential development. Greg Spatz is the sole principal of both entities.

{¶ 4} Appellee, Harbor Bay, is an Ohio limited-liability company that engages in residential development. Its land is contiguous to appellants' land. Scott Prephan is the principal of Harbor Bay.

{¶ 5} In May 2003, USCC began to develop The Cove. The principal, Spatz, negotiated with Prephan to obtain an easement over Harbor Bay. In June 2003, Harbor Bay entered into an easement agreement with USCC. Pursuant to the agreement, Harbor Bay granted USCC a 30-foot-wide utility easement ("the easement property"). The grant of easement provided:

{¶ 6} "Grantor grants and conveys to Grantee, its successors and assigns, a non-exclusive, perpetual easement in, over, across, and under the Easement Property for the benefit of Grantee and Grantee's Property for the purpose of constructing, maintaining, repairing, replacing, relocating, and operating utility lines and facilities, as defined later in this paragraph 2, for the distribution of water and sewerage, together with the right to construct lines, pump valves, and lift stations, and all other necessary equipment and appurtenances solely in accordance with plans and specifications reviewed and approved by the Ottawa County, Sanitary Engineering Department ('the Utilities'); provided, however,

that all the Utilities shall be connected underground. Grantor shall retain the right to use any surface area of the Easement Property for purposes that are consistent with the grant of the easement herein. Grantee shall not exercise its rights with respect to the Easement Property to the exclusion of the Grantor or to such an extent that it will have the effect of unreasonably interfering with the Grantor's rights in the Easement Property."

{¶ 7} In exchange for the easement rights, Harbor Bay was to receive sizable financial consideration. Specifically, Paragraph 3 of the agreement provides that the "Grantee shall pay Grantor the sum of Forty–Five Thousand Dollars on completion of Grantor's construction, installation, and tapping of the Utilities."

{¶ 8} On January 3, 2004, appellants initiated this lawsuit against Harbor Bay and set forth claims of breach of contract, breach of duty of good faith and fair dealing, misrepresentation, and implied easement. It was appellants' contention that appellee breached the agreement by failing to connect contiguous water and sewer utilities into appellants' residential development and dedicate such to Ottawa County within 60 days.

{¶ 9} Harbor Bay claimed that it had performed its obligations under the agreement by allowing The Cove to construct and install a tap to the utilities on the easement property. In his trial testimony, Prephan asserted that the agreement between Harbor Bay and USCC did not contain a time of performance or require Harbor Bay to file its plot plan or dedicate its utilities to Ottawa County at a specific time.

{¶ 10} Harbor Bay filed counterclaims against appellants. The counterclaims asserted breach of contract, breach of covenant of good faith, and a claim based on USCC's assignment of the easement to The Cove. It was asserted that The Cove materially breached the agreement by failing to tender $45,000 due in compensation for the easement.

{¶ 11} The fact that the agreement is silent as to the time of performance is not disputed. However, appellants assert that pursuant to negotiations between the parties, Harbor Bay had a duty to extend water and sewer lines to the property line of The Cove and to ensure dedication of the utilities within a reasonable time. In his trial testimony, Spatz indicated that a letter prepared by him, dated June 5, 2006, and sent to Prephan, without objection to its terms, manifests the intention of a 60–day time frame. He further contends that the agreed sum of $45,000 was to ensure that the construction process was expedited and dedication of the utilities was completed within this time frame.

{¶ 12} On September 9, 2005, Harbor Bay filed a motion for summary judgment and sought dismissal of all claims against it asserted by appellants and judgment in the amount of $45,000 on its counterclaim.

{¶ 13} On November 28, 2005, this matter was heard before the Ottawa County Common Pleas Court. At the close of appellants' case, the trial court rendered an oral decision and granted a directed verdict in favor of Harbor Bay. This decision was formalized on February 17, 2006.

{¶ 14} On February 21, 2006, the trial court granted Harbor Bay partial summary judgment on its counterclaim for a judgment against USCC, in the amount of $45,000, interests, and costs. On May 18, 2006, the trial court dismissed without prejudice all remaining counterclaims asserted by Harbor Bay.

{¶ 15} On June 14, 2006, appellants filed a timely notice of appeal and set forth the following three assignments of error:

{¶ 16} "A. The lower court erred to the prejudice of appellant U.S. Construction when it granted a directed verdict by failing to properly identify a reasonable time for performance under the contract between the parties.

{¶ 17} "B. The lower court erred, as a matter of law, when it granted a directed verdict against appellant but failed to consider parol evidence regarding the time of performance under the contract between the parties that was embodied in a written letter issued one week prior thereto.

{¶ 18} "C. The lower court erred in granting summary judgment against appellant U.S. Construction on Appellee's claim for payment of $45,000.00 under the contract."

{¶ 19} There are two preliminary issues we must address before we can proceed to the merits of appellants' arguments. First, analyzing the assignments in the order presented by appellants is not conducive to our analysis. Our judgment on appellants' second assignment of error is determinative of the validity of appellants' first assignment of error. Accordingly, we will address these assignments of error in reverse order and then proceed to the third. Second, in their first and second assignments of error, appellants challenge the trial court's decision granting a directed verdict in favor of Harbor Bay. A motion for directed verdict pursuant to a Civ.R. 50 is not the applicable standard in a nonjury trial. *Tewarson v. Simon* (2001), 141 Ohio App.3d 103, 115, 750 N.E.2d 176; *Ramco Specialties, Inc. v. Pansegrau* (1998), 134 Ohio App.3d 513, 520, 731 N.E.2d 714.

{¶ 20} It is well established that in a bench trial, the proper motion for judgment at the conclusion of a plaintiff's case is one for dismissal under Civ.R. 41(B)(2). *Harris v. Cincinnati* (1992), 79 Ohio App.3d 163, 607 N.E.2d 15; *Janell, Inc. v. Woods* (1980), 70 Ohio App.2d 216, 24 O.O.3d 266, 435 N.E.2d 1138; *Altimari v. Campbell* (1978), 56 Ohio App.2d 253, 10 O.O.3d 268, 382 N.E.2d 1187; *Jacobs v. Bd. of Cty. Commrs.* (1971), 27 Ohio App.2d 63, 56 O.O.2d 245, 272

N.E.2d 635. Thus, we will construe it as one for involuntary dismissal under Civ.R. 41(B)(2).

{¶ 21} In ruling on a motion for involuntary dismissal under Civ.R. 41(B)(2), the trial court weighs the evidence and resolves any conflict therein, and it may render judgment in favor of the defendant if the plaintiff has shown no right to relief. *Ramco Specialties, Inc.*, 134 Ohio App.3d at 520, 731 N.E.2d 714. Upon review, a trial court's judgment should not be reversed unless erroneous as a matter of law or against the manifest weight of the evidence.

{¶ 22} Therefore, if the record contains competent, credible evidence supporting the findings of fact and conclusions of law rendered by the trial court judge, this judgment will not be set aside. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 23} In their second assignment of error, appellants assert that the trial court erred when it failed to consider parol evidence regarding the time of performance under the contract between the parties that was embodied in a written letter issued one week prior to the contact.

{¶ 24} The trial court found that the utility agreement was unambiguous and that introduction of the June 5, 2003 letter would contradict the terms in it. It stated that pursuant to the doctrine of contract merger, "The parties cannot rely on prior statements or agreements to supplement the written agreement without varying its terms." Accordingly, the trial court held that parol evidence cannot be used to contradict the language of the contract.

{¶ 25} We concur with the trial court. The parol evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4 Ed.1999) 569–570, Section 33:4.

{¶ 26} This is a common-law principle that operates to prevent a party from introducing extrinsic evidence of negotiations that occurred before or while the agreement was being reduced to its final form. *Bellman v. Am. Internatl. Group*, 163 Ohio App.3d 540, 2005-Ohio-5250, 839 N.E.2d 430, ¶ 7; *Ed Schory & Sons, Inc. v. Soc. Natl. Bank* (1996), 75 Ohio St.3d 433, 440, 662 N.E.2d 1074. As such, parol evidence is generally not admissible to contradict or vary the terms of an unambiguous written contract. Id.

{¶ 27} Appellants argue that the June 5, 2003 letter, containing a 60–day time limit, should be considered to explain the parties' intent and the terms of the agreement. They contend that since the letter does not add to, vary, or

contradict the terms of the contract, it is not barred by the parol-evidence rule. However, courts will "[g]enerally * * * presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499; *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 132, 31 OBR 289, 509 N.E.2d 411. Furthermore, when no time of performance is specified in a contract, the legal effect is that it is to be performed within a reasonable time and "parol evidence is not admissible to show an agreement that it shall be performed at a particular time." *Buschmeyer v. Advance Mach. Co.* (1916), 7 Ohio App. 202, 216.

{¶ 28} The doctrine of contract merger, a corollary to the parol-evidence rule, further weakens appellants' argument. In *TRINOVA Corp. v. Pilkington Bros., P.L.C.* (1994), 70 Ohio St.3d 271, 638 N.E.2d 572, the Supreme Court of Ohio stated: "Contract integration provides that where the parties' intent is sought to be ascertained from several writings, a prior writing will be rejected in favor of a subsequent one if the latter writing contains the whole of the parties' agreement. If the subsequent agreement is complete and unambiguous on its face, parol evidence is inadmissible to show a contrary intent of the parties."

{¶ 29} In the case at bar, Paragraph 8 of the utility agreement provides: "This agreement contains the entire agreement of the parties. This agreement shall not be amended, changed or modified or any provision waived or discharged, in whole or in part, unless that agreement is in writing and duly signed by the parties hereto."

{¶ 30} Thus, by signing the agreement, it is presumed that appellants incorporated all prior negotiations and agreements into the final agreement and that the final agreement represents the intent and full agreement between the parties. *Fontbank, Inc. v. CompuServe, Inc.* (2000), 138 Ohio App.3d 801, 808, 742 N.E.2d 674; *Figetakis v. Smith* (Mar. 4, 1998), 9th Dist. No. 18393, 1998 WL 114473; *Natl. City Bank v. Donaldson* (1994), 95 Ohio App.3d 241, 245, 642 N.E.2d 58.

{¶ 31} The clear language of the agreement indicates that Harbor Bay granted USCC an easement to allow appellants to construct, maintain, repair, replace, relocate, and operate utility lines and facilities for the purpose of obtaining utility service on their property. It is also clear that USCC agreed to pay Harbor Bay the sum of $45,000 on completion of construction, installation, and tapping of the utilities. This agreement does not provide a time for performance or include a reference to a timeframe for dedication of the utilities to Ottawa County.

{¶ 32} We acknowledge that the June 5, 2003 letter provides a time for performance. However, it predates the formalized agreement and the record shows that appellants had an attorney, had time to review the agreement, and had the opportunity to bargain for its terms. Therefore, the agreement is a

clear, unambiguous, and complete representation of the parties' intent, and parol evidence is inadmissible to contradict its terms.

{¶ 33} For the foregoing reasons, the trial court did not err in holding that the proposed letter was inadmissible by application of the doctrine of contract merger and the parol-evidence rule. This decision and subsequent grant of dismissal in favor of Harbor Bay was not against the manifest weight of evidence or contrary to law. Accordingly, appellants' second assignment of error is not well taken.

{¶ 34} In their first assignment of error, appellants contend that the trial court erred to the prejudice of USCC when it failed to identify a reasonable time for performance under the contract and granted a directed verdict in favor of Harbor Bay.

{¶ 35} Under this assignment of error, appellants assert two arguments. First, they contend that the sole intent of agreement between the parties was to expedite the construction process and ensure water service to USCC's property on a timely basis. They propose that 60 days is a reasonable time and that the construction, development, and sale of appellants' property could not have been established without it.

{¶ 36} Second, appellants contend that Harbor Bay breached the duty of good faith and fair dealing by refusing to work with USCC to effectuate the purpose of their agreement. Appellants argue that Harbor Bay intentionally refused to file the dedication for almost seven months to suppress the sales and development of USCC's property and to extort additional concessions from USCC before it would file.

{¶ 37} The trial court held that since the 60–day time period is not part of the written agreement between the parties, appellants' entire case fails. We agree.

{¶ 38} The general rule as to contracts is that the time of performance is not of the essence unless the parties have included an express stipulation to that effect or such a requirement can be implied from the nature or circumstances of the contract. *Brown v. Brown* (1993), 90 Ohio App.3d 781, 784, 630 N.E.2d 763.

{¶ 39} "Reasonable time for a contract's performance is not measured by hours, days, weeks, months or years, but is to be determined from the surrounding conditions and circumstances which the parties contemplated at the time the contract was executed." *Miller v. Bealer* (1992), 80 Ohio App.3d 180, 182, 608 N.E.2d 1133.

{¶ 40} It is undisputed that this contract involved a grant of a utility easement for the development of real property. The record indicates that all parties had full knowledge of this fact. However, the agreement at issue does not indicate

that time is of the essence. If time was of the essence, it should have been made an essential part of the contract terms.

{¶ 41} Additionally, the record does not indicate that Harbor Bay failed to perform within a reasonable time or that it intentionally refused to file the dedication to suppress the sales and development of USCC's property. On the contrary, according to the trial testimony of Spatz, the construction, installation, and tapping of the utilities was completed on or before July 1, 2003.

{¶ 42} Having held above that the trial court did not err in finding that the letter indicating a 60–day time limit was inadmissible, there is nothing in the record to indicate that Harbor Bay failed to perform its obligation as set forth in the clear language of the agreement. Furthermore, "[t]he implied covenant of good faith and fair dealing cannot be used to make an end run around the parol evidence rule." *McNulty v. PLS Acquisition Corp.*, 8th Dist. No. 79025, 2002-Ohio-7220, 2002 WL 31875200, ¶ 24. Accordingly, appellants' first assignment of error is not well taken.

{¶ 43} In appellants' third assignment of error, they assert that the lower court erred in granting summary judgment against USCC on Harbor Bay's claim for payment of $45,000 under the contract.

{¶ 44} In review of a trial court's summary-judgment decision, this court employs a de novo standard of review, applying the same standard used as the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, that being that the moving party is entitled to a judgment as a matter of law. Civ.R. 56(C).

{¶ 45} Appellants argue that this case should not have been taken away from the jury's consideration pertaining to the allegations of breach of contract arguably still under dispute.

{¶ 46} Breach of contract occurs when "a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach." *Lawrence v. Lorain Cty. Community College* (1998), 127 Ohio App.3d 546, 549, 713 N.E.2d 478; *Circuit Solutions, Inc. v. Mueller Elec. Co.*, 9th Dist. No. 05–CA–008775, 2006-Ohio-4321, 2006 WL 2390269, ¶ 7.

{¶ 47} In order for appellants to prevail in their argument, they would need to show that Harbor Bay failed to perform its contractual obligations without legal excuse. The trial court held that for the reasons clearly set forth and well articulated in defendant's memorandum, "Defendant is entitled to judgment against Plaintiff on its counterclaim in the amount of $45,000.00, interest and costs." This decision was based on the finding that Harbor Bay had performed the terms of the agreement.

{¶ 48} We concur with the trial court's determination. Appellants failed to sustain the argument of a 60–day time limit. Appellants cannot show that Harbor Bay breached the agreement. As such, Harbor Bay performed its obligations under the agreement when appellants succeeded in tapping the utilities on the easement property. Therefore, appellants breached the agreement when it failed to tender $45,000.

{¶ 49} Accordingly, there is no issue of fact to be determined. Appellants' third assignment of error is not well taken.

{¶ 50} On consideration whereof, the judgment of the Ottawa County Court of Common Pleas is affirmed. Appellants are ordered to pay costs of this appeal pursuant to App.R.24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.

Judgment affirmed.

HANDWORK and PIETRYKOWSKI, JJ., concur.