NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0476n.06

No. 08-4245

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

WENDY'S INTERNATIONAL, INC. et al.,    )
                                        )
        Plaintiffs-Appellees,           )        ON APPEAL FROM THE UNITED
                                        )        STATES DISTRICT COURT FOR THE
v.                                      )        SOUTHERN DISTRICT OF OHIO
                                        )
RONALD F. SAVERIN,                      )        OPINION
                                        )
        Defendant-Appellant.            )
                                        )
_____ )

**Before: MOORE and GILMAN, Circuit Judges; and PHILLIPS, District Judge.**[*]

**RONALD LEE GILMAN, Circuit Judge.** Ronald F. Saverin owned a company that was

a franchisee of Wendy's fast-food restaurants in Illinois and Missouri. As part the Franchise

Agreements for the restaurants, Saverin agreed to personally guarantee the obligations of his

company. He contends that Wendy's breached its express and implied contractual obligations when

it terminated the Franchise Agreements and sued him for the balances due. The district court granted

summary judgment in favor of Wendy's. For the reasons set forth below, we **AFFIRM** the judgment

of the district court.

**I. BACKGROUND**

**A.    Factual background**

    *1.     The parties*

_____

[*]The Honorable Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting
by designation.

Wendy's International, Inc. is a franchisor of fast-food restaurants. It, together with several of its affiliates (collectively, Wendy's), are the appellees in this lawsuit. The appellant, Saverin, was the owner of Wendy's former franchisee WenAmerica, LLC. Saverin is a lawyer by training, but has been a full-time real-estate investor for at least two decades. He has invested in hundreds of franchises of various restaurant chains since the early 1990s.

### 2. *The applicable legal agreements and WenAmerica's default*

WenAmerica entered into various Franchise Agreements with Wendy's in 1998 to operate 46 Wendy's Old Fashioned Hamburgers restaurants in St. Louis, Missouri and several cities in central Illinois. The restaurants were the only Wendy's franchises in those markets. Saverin saw the restaurants as a favorable investment opportunity, even though many were severely underperforming at the time. As part of the transaction, Saverin executed personal guaranties of WenAmerica's obligations under the Franchise Agreements.

Starting in 2003, the Wendy's chain began a nationwide downturn in sales and profit margins. The WenAmerica franchises were no exception, and by 2006 the franchises were experiencing serious financial problems. WenAmerica consequently began defaulting on its financial obligations. Wendy's sent notices of default to WenAmerica in January 2005 and again in August of 2005, warning WenAmerica to cure its default or face termination of the applicable Franchise Agreements. By October 2005, WenAmerica remained delinquent in its payments, leading Wendy's to terminate WenAmerica's franchise rights to three restaurants in Illinois.

The parties subsequently entered negotiations to reinstate the three franchises. Wendy's ultimately restored the franchises under the terms of a March 2006 Reinstatement Agreement that required WenAmerica to cure certain financial defaults. WenAmerica and Saverin also signed two

promissory notes in conjunction with the Reinstatement Agreement for the amounts of $309,664.19 and $238,208.24.

The franchises continued to experience financial difficulties in the months after the Reinstatement Agreement was signed, leading Saverin to discuss with Wendy's senior management the possibility of selling the WenAmerica franchises. Wendy's responded by providing Saverin with a list of several existing franchisees who might be interested in acquiring Saverin's franchises.

As Saverin sought out potential buyers, one of WenAmerica's creditors, SPCP Group, LLC, began to demand default interest rates and lump-sum payments. SPCP eventually took steps in the late spring of 2006 to have a receiver appointed to operate WenAmerica's business. After learning of this development from Saverin, Wendy's sent a letter to SPCP advising it that Wendy's would immediately terminate the Franchise Agreements if a receiver was appointed. SPCP, knowing that it would need Wendy's cooperation to operate the restaurants under a receivership, temporarily halted its efforts to have a receiver appointed.

By June 2006, WenAmerica was facing looming threats of default under the Reinstatement Agreement and SPCP's potential renewal of the receivership action. Saverin accordingly suggested to Wendy's a "forbearance agreement" to facilitate "an ordinary transition from one ownership to the other . . . ." The resulting negotiations led to an August 3, 2006 agreement (the Forbearance Agreement) providing for the orderly winding down of the relationship between the parties. That agreement protected Wendy's marks and goodwill while giving WenAmerica and Saverin an opportunity to sell the restaurants as going concerns. Saverin signed the new agreement on behalf of WenAmerica and individually as a guarantor.

The Forbearance Agreement acknowledged that WenAmerica, and Saverin as the guarantor, owed Wendy's $987,819.86 in past-due obligations and promised to pay Wendy's for additional accruing obligations of rent and other amounts due under the Franchise Agreements. Moreover, the Forbearance Agreement expressly provided that the appointment of a receiver would be grounds to terminate the agreement.

WenAmerica defaulted on $279,963.19 in payment obligations to Wendy's shortly after the Forbearance Agreement became effective. Wendy's provided formal notice of default to WenAmerica and Saverin on August 28, 2006. The notice warned WenAmerica that if it failed to cure the default within three business days (before September 1), the Franchise Agreements would be terminated under the terms of the Forbearance Agreement.

Meanwhile, SPCP renewed its efforts to have a state court in St. Louis appoint a receiver over WenAmerica's business. The receivership hearing took place on September 1, 2006. SPCP stated during the hearing that Wendy's was no longer objecting to the appointment of a receiver and would work with a receiver to allow the continued operation of the former WenAmerica franchises as Wendy's restaurants. The St. Louis court thereupon granted SPCP's request and appointed a receiver for WenAmerica's business.

Less than two hours after the appointment of the receiver, Wendy's notified WenAmerica and Saverin that it was terminating the Franchise Agreements due to uncured financial defaults and the appointment of a receiver. On September 8, 2006, WenAmerica was put into involuntary bankruptcy by other creditors. Neither WenAmerica nor Saverin has paid their past-due obligations to Wendy's. Likewise, they have failed to either remove the Wendy's identification from all of the former restaurants or pay Wendy's for the cost of doing so.

**B.      Procedural history**

Wendy's filed a complaint in the United States District Court for the Southern District of Ohio in January 2007, alleging a breach-of-contract claim against Saverin.  The complaint contended that Saverin was individually liable as a guarantor of WenAmerica's obligations incurred under the Franchise, Reinstatement, and Forbearance Agreements.  Saverin denied liability and asserted a counterclaim based on Wendy's breach of the implied covenant of good faith and fair dealing.

At the close of discovery, Wendy's moved for partial summary judgment in its favor and requested that the district court enter judgment against Saverin for damages.  The court granted Wendy's motion, holding that the undisputed evidence showed that the parties entered into a comprehensive Forbearance Agreement containing an integration clause, that Saverin had failed to make the required payments without legal excuse, and that the breach had cost Wendy's at least $947,819.86 in damages.  It also held that Saverin had failed to show that a genuine issue of material fact existed regarding the alleged breach by Wendy's of an implied covenant of good faith and fair dealing.  Finally, the court rejected Saverin's arguments that his liability should be reduced to reflect (a) prospective financial benefits to Wendy's arising from the termination of the Franchise Agreements, and (b) expenses that were allegedly not within the scope of his personal guarantees.

Following the district court's grant of partial summary judgment to Wendy's, the only matter remaining for trial was a resolution of the amount of damages that Wendy's claimed was due in addition to the $947,819.86 awarded in the summary judgment order.  The parties then entered into a joint stipulation that the total amount of damages Wendy's would be entitled to at trial, including the amount already awarded, equaled $1,800,000.  They further agreed that Saverin's right to appeal the issues resolved in the partial summary judgment order was not prejudiced by the stipulation.

In accordance with its partial summary judgment order and the parties' stipulation, the district court entered a final judgment in favor of Wendy's for $1,800,000 plus statutory interest. The court also dismissed Saverin's counterclaim with prejudice. Saverin has timely appealed.

## II. ANALYSIS

### A.     Standard of review

We review de novo a district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B.     Wendy's express obligations under the Forbearance Agreement

Saverin contends that Wendy's breached the Forbearance Agreement when it did not "forbear long enough for WenAmerica to realize [the] goal" of allowing WenAmerica to find buyers for some or all of its restaurants. Wendy's correctly responds that the Forbearance Agreement explicitly gave it the right to terminate the Franchise Agreements when it did.

The Forbearance Agreement provided, in pertinent part, as follows:

2. <u>Forbearance From Termination</u>. Wendy's will forbear from exercising its rights to terminate each of the Franchise Agreements pursuant to Paragraph 1 and the termination as to any Restaurants shall not be effective until . . . a material breach by

Franchisees under this Agreement, the Franchise Agreements or the Leases[,] subject to any notice and cure rights provided in paragraph 6 hereof . . . .

6. <u>Interim Operations</u>. . . . [I]n the event of a material default . . . Wendy's shall give to WenAmerica a three (3) business day written notice and opportunity to cure. . . . It is understood that in the event a receiver is appointed over any of the Restaurants, Wendy's intends to terminate the applicable Franchise Agreements associated with those Restaurants.

By August 28, 2006, WenAmerica was more than $250,000 in default on its payments due under the Reinstatement and Forbearance Agreements. Wendy's sent a notice to WenAmerica on that date to advise WenAmerica of its three-day cure opportunity. After WenAmerica failed to pay the required amounts during the three-day notice period, Wendy's exercised its right to terminate the Franchise Agreements.

In short, Wendy's did what it was expressly allowed to do under the applicable agreements. Wendy's was under no obligation to forbear for any particular amount of time, given that WenAmerica had breached the Forbearance Agreement by defaulting on the latter's payment obligations. Saverin's argument that Wendy's failed to live up to its express contractual obligations under the Forbearance Agreement (as opposed to the alleged implied obligations discussed below) therefore fails.

## C. Obligation of good faith and fair dealing

The main focus of Saverin's arguments regarding Wendy's performance under the relevant agreements is not on the express contractual requirements, but rather on Wendy's alleged breach of its *implied* covenant of good faith and fair dealing arising thereunder. Although Saverin concedes that the Forbearance Agreement provided that Wendy's could terminate the Franchise Agreements if WenAmerica went into receivership, he reasons that Wendy's implied covenant of good faith and

fair dealing prohibited it from taking any action that might hasten the appointment of a receiver over WenAmerica by the state court in St. Louis. This good-faith obligation to oppose a receivership arose, according to Saverin, from Section 2 of the Forbearance Agreement, which gave WenAmerica until October 1, 2006 to find a buyer for its restaurants. Saverin thus contends that,

> by ensuring WenAmerica's slide into receivership, Wendy's struck the fatal blow that triggered Wendy's right to terminate the Agreement. Wendy's deprived WenAmerica and Saverin of the benefit of their bargain, frustrating the very purpose of the Forbearance Agreement, and thereby breached the implied covenant of good faith inherent in the Forbearance Agreement.

Ohio law, which both parties agree is controlling, imposes an implied duty of good faith on parties to any contract. *Ed Schory & Sons, Inc. v. Francis*, 662 N.E.2d 1074, 1082-83 (Ohio 1996). This duty requires "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio Ct. App. 2005) (quoting Restatement (Second) of Contracts, § 205 cmt. a (1981)). But the duty does not create an independent basis for a cause of action. *Thomasville Furniture Indus., Inc. v. JGR Inc.*, 3 F. App'x 467, 472 (6th Cir. 2001) (referring to the covenant of good faith and fair dealing under Ohio law as a "'salutary rule of construction,' not [] a basis for a cause of action") (quoting *Bolling v. Clevepak Corp.*, 484 N.E.2d 1367, 1376 (Ohio Ct. App. 1984)).

Wendy's raises several arguments in response to Saverin's good-faith claim; two of them are dispositive. First, Wendy's characterizes Saverin's assertion that Wendy's had a duty to oppose a receivership as an after-the-fact attempt to add an additional term to an integrated contract. Wendy's cites numerous cases standing for the proposition that, where a contract contains an integration clause—as the Forbearance Agreement does—extrinsic evidence cannot be used to prove additional promises that were not included in the express terms. *See, e.g.*, *Coal Res., Inc. v. Gulf & W. Indus.,*

*Inc.*, 756 F.2d 443, 446-47 (6th Cir. 1985) (interpreting Ohio law and observing that "[t]he purpose of an integration clause stating that there are no agreements or understandings between the parties other than those reflected in the written contract is . . . to prevent either party from relying upon statements or representations made during negotiations that were not included in the final agreement").

Saverin's reply to this first argument is that Wendy's has mischaracterized his position as an "ex-post facto attempt to add additional terms to the Forbearance Agreement." Instead, Saverin asserts, he is alleging that Wendy's bad-faith actions breached the *existing* terms of the Forbearance Agreement. Specifically, he posits that the very purpose of the Forbearance Agreement was frustrated when Wendy's failed to prevent the occurrence of a condition—the appointment of a receiver—that permitted Wendy's to prematurely terminate the Forbearance and Franchise Agreements.

But this reasoning ignores the principle that the implied duty of good faith cannot be breached by acting as allowed by the specific terms of the contract. *Ed Schory & Sons*, 662 N.E.2d at 1083; *see also Jim White Agency Co. v. Nissan Motor Corp. in U.S.A.*, 126 F.3d 832, 834-35 (6th Cir. 1997) (holding, in a case decided under Ohio law, that a franchisor cannot "be found liable for failure to act in good faith where it has done no more than to insist on enforcing its contract rights to the detriment of its franchisee"). Simply put, Saverin admits that Wendy's did what it was explicitly allowed to do by the Forbearance Agreement—terminate the franchises based on an existing default after a three-day cure period. The fact that Wendy's actions were not optimal for WenAmerica is irrelevant from a contract-law perspective. *See Ed Schory & Sons*, 662 N.E.2d at 1082 ("Firms that have negotiated contracts are entitled to enforce them to the letter, even to the

great discomfort of their trading partners, without being mulcted for lack of 'good faith.'") (quoting

*Kham & Nate's Shoes No. 2, Inc., v. First Bank of Whiting*, 908 F.2d 1351, 1357-58 (7th Cir. 1990));

*see also Forsythe v. BancBoston Mortg. Corp.*, 135 F.3d 1069, 1075-76 (6th Cir. 1997) (noting that

conduct that is considered "hard-nosed" or "distasteful" is not bad faith under Kentucky law, and that

a party does not need to be "more accommodating" as long as its conduct complies with the

contract).

Wendy's second argument is that, even assuming that Saverin's good-faith arguments are not

construed as attempts to add terms to the contract, Wendy's failure to oppose the receivership did

not breach its implied duty of good faith. The Ohio Supreme Court has explained that the implied

covenant of good faith and fair dealing is implicated by acts or omissions "*that could not have been*

*contemplated at the time of drafting*, and which therefore w[ere] not resolved explicitly by the

parties." *Ed Schory & Sons*, 662 N.E.2d at 1082-83 (emphasis added). Saverin's arguments revolve

around the fact that Wendy's opposition to a receivership was central to the purpose of the

Forbearance Agreement. But the terms of the Forbearance Agreement and the surrounding

circumstances make clear that the potential for SPCP or another creditor to renew or initiate

receivership proceedings was of utmost concern to both Saverin and Wendy's at the time the

agreement was negotiated.

We are thus unpersuaded by Saverin's argument that Wendy's actions in connection with

future receivership proceedings could not have been contemplated at the time of drafting. *See id.*;

*Agilysys Inc. v. Gordon,* No. 1:06-CV-1665, 2008 U.S. Dist. LEXIS 99553, at *14-15 (N.D. Ohio

Dec. 10, 2008) (holding that the defendant cannot create contract rights that could have been

contemplated but were omitted from the agreement); *U.S. Construction Corp. v. Harbor Bay Estates,*

*Ltd.*, 876 N.E.2d 637, 643 (Ohio Ct. App. 2007) (noting, in rejecting a good-faith claim, that if a provision was important to the parties, "it should have been made an essential part of the contract terms"). Saverin, after all, is a lawyer and experienced investor who was represented by sophisticated legal counsel at all times.

Because Saverin failed to introduce any evidence creating a genuine issue of material fact on the question of Wendy's alleged breach of an implied covenant of good faith and fair dealing, the district court's grant of summary judgment to Wendy's on this point was not erroneous. The only issue remaining for discussion is thus the total dollar amount of Saverin's liability to Wendy's.

## D. Saverin's liability

### 1. Scope of the guaranty

The district court ruled that Saverin was individually liable for all obligations not fulfilled by WenAmerica under the Forbearance Agreement, including (a) the payment of all outstanding amounts due under the agreement, (b) the costs, expenses, and fees incurred by Wendy's in removing its identity from WenAmerica's restaurants, and (c) Wendy's costs, expenses, and attorney fees incurred in enforcing its rights. Saverin argues on appeal, however, that he is not personally bound to pay all amounts owed by WenAmerica. He specifically contends that the scope of his personal guaranty does not include certain unpaid rent and bakery obligations.

But Exhibit F of the Forbearance Agreement lists unpaid rent and bakery obligations among the amounts covered by the agreement. Saverin contends, however, that (a) the Forbearance Agreement did not specifically state that Saverin was the guarantor of the "separate lease agreements" mentioned in Exhibit F, (b) the Forbearance Agreement did not bind him to any *future* rent or bakery obligations arising after the date of the agreement, and (c) there is a genuine issue of

material fact as to whether the district court's total award includes such amounts. We find none of these arguments persuasive.

First, the Forbearance Agreement defined the term "WenAmerica" to include Saverin as the guarantor. WenAmerica's unpaid rent and bakery obligations under the Forbearance Agreement were thus Saverin's by definition. Because WenAmerica expressly acknowledged in Section 9 of the Forbearance Agreement that the sums itemized in Exhibit F were due to Wendy's, and that Wendy's reserved all of its rights "to pursue WenAmerica *and Guarantor*" for all "*other outstanding amounts*," Saverin is plainly liable for these obligations. (Emphasis added.)

Second, Saverin entered into a joint stipulation with Wendy's that "the total amount of damages to which [Wendy's] would be entitled at trial based upon, and as a result of, the Order is $1,800,000." The court thus awarded Wendy's only the amount that Saverin agreed was due under the Forbearance Agreement. Saverin did not raise any objections regarding this amount before the district court and has shown no basis to set aside the $1,800,000 total award on appeal.

### 2. *Setoff*

Saverin's final argument is that he is entitled to offset the damage award against him to reflect the benefits that Wendy's will purportedly enjoy as a direct result of his breach. He reasons that, had he performed his duties under the applicable agreements, Wendy's would not have had the opportunity to open profitable, company-owned restaurants in St. Louis or to refranchise the restaurants in Central Illinois. When a defendant's breach of contract causes damages, but also "confer[s] some benefit upon the plaintiff, the doctrine of offsetting damages calls for the amount of the plaintiff's damages to be reduced by the amount of the benefit received." *John Morrell & Co. v. Local Union 304A*, *AFL-CIO*, 913 F.2d 544, 557 (8th Cir. 1990) (rejecting the defendants'

argument for a damages setoff to reflect labor savings during a strike where the defendants, "as the breaching party, have the burden of proving that the breach resulted in a direct and immediate savings to the plaintiff" (citation and internal quotation marks omitted)).

Here, Saverin is asking us to offset Wendy's actual losses with hypothetical profits over time. Saverin's proposition makes two speculative assumptions: (a) that Wendy's will indeed carry out a plan to reopen each restaurant, and (b) that Wendy's would earn more profits from operating company-owned restaurants than it would have earned from WenAmerica's continuing operation of the restaurants as a franchisee. We "refuse to engage in the kind of speculative guessing . . . [required] to try to value a claim without a showing that it eventually led to actual, and thus, quantifiable savings." *Groupo Condumex, S.A. v. SPX Corp.*, No. 3:99CV7316, 2008 U.S. Dist. LEXIS 82269, at \*30 (N.D. Ohio Sept. 19, 2008). Furthermore, any future profits enjoyed by Wendy's would be due to its own efforts, not to Saverin's breach. *See Trans World Airlines, Inc. v. Summa Corp.*, No. 1607, 1986 Del. Ch. LEXIS 420, at \*38-39 (Del. Ch. May 15, 1986) (holding that, although the defendant's breach allowed the plaintiff to follow a business plan that saved money years later, the plaintiff's "cost savings . . . [were] the result of its own efforts," and offset was therefore inappropriate). We thus conclude that Saverin is not entitled to an offset against the award of damages to Wendy's.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.